IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | Crim. No.: MJM-25-187 |
| v. | * | |
| | * | |
| FRANCISCO REYMUNDO REYMUNDO, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Currently pending is the United States of America's Motion to Review Release Order. ECF No. 24. The government asks that the Court vacate the Order Setting Conditions of Release entered on June 20, 2025 ("Release Order") and that defendant Francisco Reymundo Reymundo be ordered detained pending trial in this criminal matter. ECF Nos. 24, 27. Mr. Reymundo filed a response in opposition to the government's motion, ECF No. 28, and the government filed a reply, ECF No. 29. The Court stayed the Release Order pending a decision on the government's motion, ECF No. 26, and heard oral argument on June 24, 2025. For reasons explained herein, the Release Order is vacated, and the defendant shall be detained pending trial.

## I.    FACTUAL BACKGROUND[1]

Mr. Reymundo is a citizen and national of Guatemala and lacks lawful immigration status within the United States. He was encountered by law enforcement in Texas on August 9, 2013, after crossing the United States border without inspection by an immigration officer, and he was

---

[1] This factual background is drawn from information contained in the affidavit filed in support of the criminal complaint filed in this matter, ECF No. 3, and additional information presented in connection Mr. Reymundo's detention hearing and proffered by the parties and from exhibits attached to the parties' filings in this matter. The Court notes that Mr. Reymundo remains entitled a presumption of innocence as to the pending charge. *See* 18 U.S.C. § 3142(j).

ordered removed from the United States four days later. Mr. Reymundo was removed to Guatemala on August 16, 2013, and reentered the United States less than a month later. He was encountered again by law enforcement in the United States on September 11, 2013. The removal order was reinstated, and Mr. Reymundo was removed to Guatemala again on September 15, 2013.

Mr. Reymundo reentered the United States and was found in Iowa on August 11, 2014, and the removal order was reinstated. On August 13, 2014, a federal indictment was filed in the Northern District of Iowa charging Mr. Reymundo with unlawful reentry after removal in violation of 8 U.S.C. § 1326. *See United States v. Reymundo-Reymundo*, No. 14-CR-90-LRR (N.D. Iowa). He eventually entered a guilty plea and received a time-served sentence of 71 days. On November 19, 2014, he was removed to Guatemala again.

On July 10, 2019, Mr. Reymundo was found in Iowa again and arrested on a theft charge. He was convicted of this charge on August 2, 2019, sentenced to 30 days' incarceration, and fined. His removal order was reinstated on August 22, 2019. On September 11, 2019, a federal indictment was filed in the Southern District of Iowa charging Mr. Reymundo with another violation of § 1326. *See United States v. Reymundo-Reymundo*, No. 3:19-cr-81 (S.D. Iowa). He eventually entered a guilty plea in that case and, on February 25, 2020, was sentenced to eight months of imprisonment. On September 14, 2020, Mr. Reymundo was removed to Guatemala for the fourth time.

Mr. Reymundo reentered the United States again. He was found in Baltimore County, Maryland on April 6, 2025, and was arrested for trespass and intoxicated public disturbance.

The government has no record of Mr. Reymundo ever obtaining permission of the U.S. Attorney General or Secretary for Homeland Security to reenter the United States after his initial deportation.

II.    **PROCEDURAL BACKGROUND**

A criminal complaint was filed in this matter on June 10, 2025, charging Mr. Reymundo with reentry after removal in violation of § 1326. ECF No. 1. His state charges were dismissed, and Mr. Reymundo entered the custody of the U.S. Marshal Service ("USMS"). U.S. Immigration and Customs Enforcement ("ICE") lodged a detainer requesting the opportunity to assume custody of Mr. Reymundo upon release by USMS. ECF No. 28-1.

Mr. Reymundo had an initial appearance on June 12. The government requested Mr. Reymundo's detention pending trial, and the defense requested pretrial release. An Order of Temporary Detention was entered pending a detention hearing. ECF No. 12.

Magistrate Judge Charles D. Austin conducted a detention hearing on June 18, and the hearing continued on June 20. In advance of the hearing, the government filed a brief in support of pretrial detention, ECF No. 15, and both parties filed briefs in support of their respective positions on June 19.

After the hearing on June 20, Judge Austin gave a detailed oral ruling that, although the case involves a serious risk of flight, conditions could be set to assure Mr. Reymundo's appearance for court proceedings in this case. On this basis, Judge Austin entered an Order Setting Conditions of Release, including a condition that the defendant reside at a local residential treatment program, appear for court as required, report to Pretrial Services on a regular basis, not obtain any travel documents, and restrict his travel to the District of Maryland, among other conditions. ECF No. 23 ("Release Order"). The Release Order states that if Mr. Reymundo is taken into ICE custody pursuant to the immigration detainer and later released, he must comply with any conditions of release imposed by immigration officials and submit himself to USMS or to the U.S. Probation and Pretrial Services Office so that the Court may conduct a bail review hearing and determine the

availability of placement in the residential treatment program or a suitable alternative. *Id.* If Mr. Reymundo is not taken into ICE custody, then the Release Order requires his counsel to arrange for transportation to the residential treatment facility. *Id.* By its own terms the Release Order was temporarily stayed to permit the government to request a further stay and review of the Release Order by the undersigned. *Id.*

The government promptly filed a Motion to Review Release Order and Extend Stay of the Release Order Pending Review. ECF No. 24. The undersigned granted stay of the Release Order pending review and further order of the Court. ECF No. 26.[2] The government then filed a memorandum in support of its request to vacate the Release Order, ECF No. 27; the defense filed an opposition brief, ECF No. 28; and the government filed a reply, ECF No. 29. The parties presented oral argument at a hearing on June 24, 2025, and the Court took the matter under advisement.

On June 25, 2025, the grand jury returned an Indictment charging Mr. Reymundo with illegal reentry of a deported alien in violation of 8 U.S.C. § 1326(a).

### III.     LEGAL STANDARD

The Bail Reform Act of 1984 ("BRA") provides four options for release or detention of a criminal defendant pending trial: "(1) release on personal recognizance or upon execution of an unsecured appearance bond under [18 U.S.C.] § 3142(b); (2) release on one or more conditions outlined in § 3142(c); (3) temporary detention to permit revocation of conditional release, deportation, or exclusion under § 3142(d); or (4) detention pursuant to § 3142(e)." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1123 (N.D. Iowa 2018) (citing 18 U.S.C. § 3142(a)); *see also United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 588 n.1 (E.D. Ky. 2023). "In our

---

[2] The Court stated its reasons for granting the stay on the record at a hearing conducted on June 24, 2025.

society liberty is the norm, and detention prior to trial or without trial is the carefully limited

exception . . . . [T]he provisions for pretrial detention in the [BRA] fall within that carefully limited

exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The BRA "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017); *see also Cobix-Espinoza*, 655 F. Supp. 3d at 587.

> First, the government may move for pre-trial detention if the defendant has been charged with certain enumerated offenses or "in a case that involves . . . a serious risk that such person will flee; or . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

*Ailon-Ailon*, 875 F.3d at 1336 (quoting 18 U.S.C. § 3142(f)).

> Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

*Cobix-Espinoza*, 655 F. Supp. 3d at 587 (citing 18 U.S.C. § 3142(e)). "To make this determination, the Court performs an individualized assessment of the defendant's history and characteristics, 'the nature and circumstances of the offense charged, the weight of the evidence,' and 'the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.'" *United States v. King*, Crim. No. PJM-22-366, 2024 WL 1657350, at *2 (D. Md. Apr. 16, 2024) (citing 18 U.S.C. § 3142(g)). At a detention hearing, the parties may present, and the court may accept, information presented by proffer. *See United States v. Vane*, 117 F.4th 244, 250–52 (4th Cir. 2024).

If the defendant "is ordered released by a magistrate judge . . . the attorney for the Government may file . . . a motion for revocation of the order or amendment of the conditions of

release" for consideration by the presiding district judge. 18 U.S.C. § 3145(a)(1). The district judge reviews the matter de novo and "must make an independent determination" as to pretrial detention or conditions of release. *United States v. Gallagher*, Crim. No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (quoting *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001)).

## IV.    DISCUSSION

In its motion, the government seeks revocation of the Release Order and entry of an order of pretrial detention on the grounds that the case involves a serious risk of flight and that no release condition or combination of release conditions will reasonably assure Mr. Reymundo's appearance at future proceedings in this matter. The defense argues that this case does not involve a serious flight risk but, even if it did, the conditions set in the Release Order and additional conditions available to the Court will reasonably assure Mr. Reymundo's appearance for further proceedings.

### A.  This Case Involves a Serious Risk of Flight

The undersigned agrees with Judge Austin that a detention hearing was justified in this case by a serious risk of flight.

The offense charged in this case—illegal reentry in violation of 8 U.S.C. § 1326(a)—is not among offenses enumerated in 18 U.S.C. § 3142(f)(1). Accordingly, a detention hearing would only be warranted upon the government's motion if the case involves a serious risk of either flight or obstruction of justice under § 3142(f)(2). When proceeding based on a serious flight risk, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). "[T]he standard requires showing that it is more likely than not that a serious risk of flight exists, not that it is more likely than not that the defendant will flee." *United States v. Perez-Vasquez*, No. 5:25-CR-0086-GTS-1, 2025 WL 1248651, at *7 (N.D.N.Y. Apr. 22, 2025). In deciding whether a case

6

involves a serious flight risk, a court may consider: "(1) the defendant's incentive to flee, (2) the ability to flee, (3) ties to the jurisdiction and the United States, and (4) reliability and trustworthiness." *United States v. Rodriguez-Fuentes*, No. 5:24-CR-00122-KKC-MAS, 2025 WL 711955, at *3 (E.D. Ky. Mar. 5, 2025) (quoting *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023)), *cited in United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 691 (D. Md. 2025).

I will first examine Mr. Reymundo's ability to flee before moving on to the other three *Figueroa-Alvarez* factors.

### 1. Ability to Flee

First, Mr. Reymundo's extensive travels over long distances over the past twelve years demonstrates his ability to leave this district and avoid further proceedings in this case. I find that by a preponderance of the evidence that he has the ability to flee.

#### a. Whether to consider the immigration detainer

The defense argues that Mr. Reymundo lacks the ability to flee because he is subject to an immigration detainer permitting ICE to assume custody of him upon his release from USMS custody. *See* ECF No. 28 at 15 (arguing the fact that an ICE detainer has been lodged means "there is a certainty that Mr. Reymundo-Reymundo will not file because he cannot flee"); ECF No. 28-1 (immigration detainer). For its part, the government urges the Court to adopt the holding of the U.S. Court of Appeals for the Ninth Circuit in *United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019), and decline to consider the immigration detainer lodged against Mr. Reymundo in deciding the issue of pretrial release or detention under the BRA.

In *Diaz-Hernandez*, the district court ordered pretrial detention for a defendant charged with violating 8 U.S.C. § 1326(a), and the defendant appealed that order to the Ninth Circuit. 943

F.3d at 1197–98. The defendant argued that the district court "erred in deeming him a flight risk because his immigration detainer, and detention by ICE should he be released on bail, eliminates any such risk." *Id.* at 1198. The Ninth Circuit rejected that argument, holding that "the district court properly declined to consider Diaz-Hernandez's immigration detainer in assessing whether pre-trial detention was appropriate under the Bail Reform Act."[3] *Id.*

The Ninth Circuit identified two specific reasons for its conclusion that "the 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody." *Id.* at 1199. First, the court noted that a defendant's "immigration status" is not among the factors listed in 18 U.S.C. § 3142(g) for judicial officers to consider in deciding whether conditions can be set to reasonably assure the defendant's presence for criminal proceedings.[4] *Id.* at 1198 (quoting *Santos-Flores*, 794 F.3d at 1090). Respectfully, the undersigned

---

[3] A number other courts have declined to consider immigration detainers when deciding whether a case involves a serious flight risk under the BRA. *See, e.g.*, *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1110 (D. Minn. 2009); *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140; *Perez-Vasquez*, 2025 WL 1248651, at *5. Several courts have expressly adopted the Ninth Circuit's reasoning in *Diaz-Hernandez*. *See, e.g.*, *United States v. Vargas-Ramirez*, No. 20-40003-01-DDC, 2020 WL 1285378, at *2 (D. Kan. Mar. 16, 2020); *United States v. Hernandez-Us*, Crim. No. 25-45, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025); *United States v. Marroquin-Ramirez*, No. 5:25-CR-125 (AJB), 2025 WL 1248652, at *5 (N.D.N.Y. Apr. 17, 2025). Other courts, including judges in this district, have either expressly rejected this approach or otherwise relied upon immigration detainers in ordering pretrial release. *See United States v. Caballero-Jones*, No. CR JKB-25-0131, 2025 WL 1622194, at *1 (D. Md. June 6, 2025); *United States v. Reyes Gonzales*, Crim. No. ABA-25-171, 2025 WL 1745640, at *2–3 (D. Md. June 24, 2025); *United States v. Abrego Garcia*, No. 3:25-CR-00115-1, 2025 WL 1727738, at *18 (M.D. Tenn. June 22, 2025). For reasons explained *infra*, I respectfully part company with my colleagues on this issue. To my knowledge, the issue has not been addressed by the U.S. Court of Appeals for the Fourth Circuit.

[4] Its reliance upon the statutory text of § 3142(g) suggests that this reason may be strictly applicable only after the threshold question of whether to hold a detention hearing under § 3142(f) has been decided in the affirmative. Only after passing that threshold is the judicial officer expressly tasked with considering the factors listed in § 3142(g) to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(g). But the factors listed in § 3142(g) are equally worthy of consideration in deciding the threshold question of whether a case involves a serious risk of flight or obstruction of justice under § 3142(f)(2). *See United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) (identifying § 3142(g) factors as the

does not find this reason to be persuasive. Section 3142(g) identifies the defendant's "history and characteristics" as a factor and provides a non-exhaustive list of matters that may be taken into account, including the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). This § 3142(g) factor is broad in scope, and I see no reason to exclude a defendant's legal immigration status from consideration.[5]

I find the second reason for the Ninth Circuit's holding in *Diaz-Hernandez* to be more persuasive. The court reasoned that, in "addressing whether pre-trial detention is appropriate under the Bail Reform Act," it would be improper for a district court to "speculate as to what may or may not happen in the future to the defendant" after he is released to ICE custody pursuant to an immigration detainer. *Id.* at 1199. The undersigned finds this reason to offer compelling support for the proposition that an immigration detainer is not an appropriate consideration in deciding whether the defendant has the ability to flee under § 3142(f) and is not a condition upon which a court may rely in ordering pretrial release under § 3142(g). *See Perez-Vasquez*, 2025 WL 1248651, at *5 ("[A]lthough the existence of an immigration detainer may be considered as a non-dispositive factor relevant to the history and characteristics of the defendant,[] the weight of reasoned authority prohibits courts from considering the existence of an immigration detainer even as a non-dispositive factor in determining whether or not the defendant poses a serious risk of flight for purposes of 18 U.S.C. § 3142(f)(2)(A)." (citing cases)); *United States v. Hernandez-Us*, Crim. No.

---

factors "a court must consider to determine whether an individual is a flight risk"). I read the holding *Diaz-Hernandez* as intended to apply to both steps of the BRA's pretrial detention analysis.

[5] Indeed, a defendant's immigration status may be relevant to their "community ties," 18 U.S.C. § 3142(g)(3)(A), and may be appropriately considered in determining whether they have an incentive to flee prosecution.

25-45, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025) ("'[T]he prospect of the alien defendant's

immigration detention or involuntary deportation if released from criminal custody' is not to be

considered in analyzing eligibility for pretrial detention as a serious flight risk." (quoting

*Figueroa-Alvarez*, 681 F. Supp. 3d at 1140)); *United States v. Marroquin-Ramirez*, No. 5:25-CR-

125 (AJB), 2025 WL 1248652, at *5 (N.D.N.Y. Apr. 17, 2025). *But see United States v. Caballero-

Jones*, No. CR JKB-25-0131, 2025 WL 1622194, at *1 (D. Md. June 6, 2025) (affirming finding

that defendant will not pose a flight risk upon release to ICE custody); *United States v. Reyes

Gonzales*, Crim. No. ABA-25-171, 2025 WL 1745640, at *2–3 (D. Md. June 24, 2025) (rejecting

argument that immigration detainers should not be considered in deciding pretrial release or

detention under the BRA); *United States v. Abrego Garcia*, No. 3:25-CR-00115-1, 2025 WL

1727738, at *18 (M.D. Tenn. June 22, 2025) ("In this particular case, the Court finds that the

undisputed ICE detainer obviates any serious risk of flight because there is no suggestion that, if

Abrego is released, the action taken by the government will be anything other than detaining him

in ICE custody pending further removal proceedings.").[6]

  The Ninth Circuit correctly pointed out, as several other Courts of Appeals have

recognized, that "detention of a 'criminal defendant pending trial pursuant to the [Bail Reform

Act] and detention of a removable alien pursuant to the [Immigration and Nationality Act ("INA")]

are separate functions that serve separate purposes and are performed by different authorities.'"

---

[6] In *United States v. Hernandez Cerrato*, the undersigned relied in part on a defendant's immigration detainer in finding that compelling reasons justified a temporary release order pursuant to 8 U.S.C. § 3142(i). Crim. No. MJM-23-419, 2024 WL 1532748 (D. Md. Apr. 9, 2024). The order directed release of the defendant to his immigration detainer pending further immigration proceedings but required USMS to lodge a detainer with ICE in order to resume custody of the defendant should ICE release him. Id. at *6–7. Notwithstanding, ICE eventually released the defendant to the community without USMS assuming custody. I find that the events in *Hernandez Cerrato* counsel in favor making an individualized assessment of a defendant and the particular circumstances of a case when deciding release or detention under the BRA, without any expectation or assumption as to whether or how long the defendant with an immigration detainer may be detained by ICE if released to ICE custody.

*Id.* (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019)); *see also United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019); *United States v. Veloz-Alonso*, 910 F.3d 266, 269–70 (6th Cir. 2018). Not only do "[t]he BRA and the INA . . . serve different purposes[;]" they "govern separate adjudicatory proceedings[] and provide independent statutory bases for detention." *Lett*, 944 F.3d at 470. Immigration officials do not enjoy unlimited authority to detain potentially removable aliens; they must decide whether to detain or release an alien in accordance with the provisions of the INA, subject to what limited resources may be available to the agency. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 682–84, 121 S. Ct. 2491, 2495, 150 L. Ed. 2d 653 (2001) (describing statutory and regulatory provisions that apply in determining whether immigration authorities may or must detain or release an alien subject to a removal order and pending removal). An alien may only be "detained under the INA to facilitate his removal from the country." *Vasquez-Benitez*, 919 F.3d at 553 (citing 8 U.S.C. § 1231(a)(2))). A district court cannot assume based solely on the existence of an immigration detainer that ICE will take *and maintain* custody of a criminal defendant until completion of their criminal proceedings. In other words, the existence of an immigration detainer cannot be properly relied upon to rebut the notion that a defendant may have an opportunity to flee prosecution upon release under the BRA. Ultimately, "[a] district court, addressing whether pre-trial detention is appropriate under the Bail Reform Act, may not speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime." *Diaz-Hernandez*, 943 F.3d at 1199.

I am also persuaded by the suggestion in *Diaz-Hernandez* that considering a defendant's immigration detainer when assessing a defendant's ability to flee tends to render consideration of other factors identified in the BRA "superfluous" and therefore runs counter to the sort of "individualized evaluation" the BRA requires. *Id.* If an immigration detainer could be relied upon

as an assurance that a defendant cannot flee and will appear for future criminal proceedings, then there would be no point in examining a defendant's "history and characteristics" or "the nature and circumstances of the offense charged," as the BRA expressly requires. 18 U.S.C. § 3143(g)(3).[7] *Cf. United States v. Vargas-Ramirez*, No. 20-40003-01-DDC, 2020 WL 1285378, at *2 (D. Kan. Mar. 16, 2020) (holding that an ICE detainer is neither conclusive evidence of a serious flight risk nor "conclusive evidence that a defendant poses no risk of flight" (citing *Diaz-Hernandez*, 943 F.3d at 1199)).

For the foregoing reasons, I find that the lodging of an immigration detainer is not a proper consideration in deciding whether Mr. Reymundo has the ability to flee. *See Diaz-Hernandez*, 943 F.3d at 1199; *Marroquin-Ramirez*, 2025 WL 1248652, at *5 (N.D.N.Y. Apr. 17, 2025); *Perez-Vasquez*, 2025 WL 1248651, at *5.[8]

### b. *Other factors bearing on the defendant's ability to flee*

Setting aside Mr. Reymundo's immigration detainer, I find by a preponderance of the evidence that the defendant has the ability to flee prosecution. He has demonstrated on several occasions a long-standing capacity to travel significant distances, crossing several national and state borders each time. Mr. Reymundo was first encountered by law enforcement in the United States in August 2013 and was removed from Texas to Guatemala within days. He promptly reentered the United States and was encountered by law enforcement again in September 2013.

---

[7] *See* footnote 4 *supra*.

[8] The courts in *Diaz-Hernandez* and *Marroquin-Ramirez* go a step further in holding that an immigration detainer should not be considered at all in deciding pretrial release or detention. *See Diaz-Hernandez*, 943 F.3d at 1199; *Marroquin-Ramirez*, 2025 WL 1248652, at *5. I am not persuaded to go that far. As explained in Part IV.A.2 *infra*, the prospect of immigration detention and removal may be properly considered in assessing whether a defendant has an incentive to flee because such an assessment does not rely upon speculation about what immigration authorities will actually do with a defendant once they assume custody. A defendant's expectation that they will be eventually deported after serving any sentence imposed in the criminal case is sufficient to give rise to an incentive to flee in the defendant. See *Mejias-Mejias*, 771 F. Supp. 3d at 692; *Rodriguez-Fuentes*, 2025 WL 711955, at *6.

Following another removal to Guatemala, Mr. Reymundo was found a year later in Iowa—approximately 2,500 miles from Guatemala. After yet another removal to Guatemala, Mr. Reymundo traveled to Iowa again and was found there in July 2019. Following another removal to Guatemala in September 2020, Mr. Reymundo was found in Baltimore County, Maryland in April 2025—approximately 3,000 miles from Guatemala. In sum, over the past twelve years, Mr. Reymundo has traveled thousands of miles, including by unlawfully crossing United States borders several times and twice avoiding detection by law enforcement for close to five years. This history of extensive and undetected travel establishes Mr. Reymundo's ability to flee.

The defense emphasizes Mr. Reymundo's apparent lack of resources and homelessness at the time he was encountered in April 2025, arguing that he does not have the "financial means to flee." ECF No. 28 at 6. While Mr. Reymundo may indeed lack the money to book a flight or pay a train fare, he has traveled very long distances multiple times over the past decade, and this Court has been presented with no information to suggest that he had substantially greater financial means at the time of his prior travels.

Mr. Reymundo's ability to flee weighs in favor of finding that this case involves a flight risk.

### 2. Incentive to Flee

Mr. Reymundo has clear incentives to flee prosecution: to avoid a sentence of imprisonment and his fifth deportation.

The defendant will remain entitled to the presumption of evidence through the date of his trial, *see* 18 U.S.C. § 1342(j), but "the weight of the evidence against [the defendant]" for violating 8 U.S.C. § 1326(a) is substantial and straightforward, *id.* § 1342(g)(2). To establish Mr. Reymundo's guilt for the offense, the government will have to prove that he was an alien who had

deported or removed from the United States and thereafter reentered or was found in the United States without having obtained the express consent of the Attorney General or the Secretary for Homeland Security to reapply for admission. 8 U.S.C. § 1326(a). The affidavit filed in support of the criminal complaint in this case establishes each essential element of the offense. ECF No. 3. Mr. Reymundo was deported from the United States pursuant to a removal order multiple times in the past, and reentered the country multiple times, resulting in two prior convictions for violating § 1326(a). In April 2025, Mr. Reymundo was found in the United States again—specifically, Baltimore County, Maryland, this time. There is no record that the defendant was ever legally authorized to reenter the country.

If this case results in a conviction, Mr. Reymundo may reasonably expect a prison sentence that exceeds the length of sentences he received for his prior § 1326(a) convictions. Mr. Reymundo received a 71-day jail sentence for his first § 1326(a) conviction in 2014 and an eight-month sentence for his second such conviction in 2020. The government has estimated the defendant's advisory sentencing guidelines range in the instant case to be twelve to eighteen months of imprisonment.[9] Mr. Reymundo's exposure to a potential prison sentence within this range provides one incentive to flee. *See Rodriguez-Fuentes*, 2025 WL 711955, at *4 ("[T]he severity of potential punishment may influence a defendant's incentive to flee." (citing cases)).

The likelihood that Mr. Reymundo eventually will be deported again after serving any prison sentence imposed in this case gives him another incentive to flee prosecution. *See Mejias-Mejias*, 771 F. Supp. 3d at 692 ("[T]he existence of a pending detainer and forced removal may

---

[9] Mr. Reymundo's base offense level for illegal reentry will be eight pursuant to U.S.S.G. § 2L1.2(a) and will increase by four levels pursuant to § 2L1.2(b)(1)(A) because he has a prior felony conviction for the same offense, resulting in an adjusted offense level of twelve. His criminal history category will likely be II, based on his prior convictions for theft and illegal reentry in 2019. *See* U.S.S.G. § 4A1.1. An adjusted offense level of twelve and criminal history category II result in a guidelines range of twelve to eighteen months of imprisonment.

be relevant to the flight risk determination to the extent that the potential removal provides incentive to an individual able to flee."); *United States v. Nunez*, No. 4:25-CR-07, 2025 WL 875803, at *3 (E.D. Va. Mar. 20, 2025) (weighing "the threat of being involuntarily removed" strongly in favor of finding a flight risk); *Rodriguez-Fuentes*, 2025 WL 711955, at *6 (citing removal order among incentives to flee). [10] Two of Mr. Reymundo's four prior removals from the United States occurred promptly after serving sentences in his two prior federal criminal cases. Mr. Reymundo can reasonably expect the same result after serving any sentence in the instant case. His long series of reentries into the United States demonstrates a likely desire to avoid another removal to Guatemala, giving him an incentive to avoid the prosecution of this case. "Simply put, a significant incentive exists for the defendant to absent himself from further proceedings to avoid possible imprisonment followed by deportation." *United States v. Benitez-Elvira*, No. 1:14-CR-391-1, 2014 WL 6896142, at *2 (M.D.N.C. Dec. 5, 2014).

The defense argues that Mr. Reymundo's series unlawful reentries demonstrates the "opposite" of an incentive to flee: "a firm resolve to reside in this country." ECF No. 28 at 7 (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1144). I do not doubt Mr. Reymundo's desire to reside in the United States, but I find his resolve to reside in this country fully consistent with an incentive to flee. "Flight does not solely refer to flight from this country. Flight covers the broader

---

[10] As explained in Part IV.A.1.a *supra*, I do not find Mr. Reymundo's immigration detainer to be a proper consideration in deciding whether he has the ability to flee prosecution because a district court cannot expect or require immigration authorities to maintain custody of an alien for the duration of their criminal case. However, I would not bar consideration of an immigration detainer in deciding whether a defendant has an incentive to flee. Such consideration does not require a district court to "speculate as to what may or may not happen in the future to the defendant" while in ICE custody, "under a different statutory and regulatory regime." *Diaz-Hernandez*, 943 F.3d at 1199. Deciding whether a defendant has an incentive to flee only requires a court to draw conclusions about a defendant's probable mind state based on their past behavior and present circumstances. And the existence of an immigration detainer is a relevant circumstance because it confirms for the defendant that ICE is presently interested in taking custody of him after he serves his sentence, in order to effectuate his removal from the United States. If Mr. Reymundo is motivated to avoid this outcome, then he may have—and I find that he does have—an incentive to flee prosecution of the instant case.

idea of flight from prosecution in this District." *United States v. Rodriguez-Rodriguez*, Crim. No. 25-175 (SRN/ECW), 2025 WL 1685830, at *3 (D. Minn. June 16, 2025). The continental United States is a land mass of vast size with numerous internal jurisdictional boundaries and no shortage of places to which a person motivated to flee prosecution may run and hide. Although the Court does not perceive any incentive in Mr. Reymundo to flee from the United States, his apparent motivation to avoid another deportation to Guatemala gives him an incentive to flee this district and to avoid further proceedings in this case. And as noted in Part IV.A.1.b *supra*, Mr. Reymundo has traveled thousands of miles several times in the past and avoided detection for several years at a time.

Findings that Mr. Reymundo has the ability and incentives to flee prosecution do not complete the analysis of whether this case involves a serious flight risk. In the circumstances of this case, his ability and incentives to flee are not so great as to support, by themselves, the conclusion that this case "involves . . . a serious risk that [the defendant] will flee[.]"[11] 18 U.S.C. § 3142(f)(2)(A). The Court must move on to consider Mr. Reymundo's ties to the community and the extent to which he had demonstrated reliability and trustworthiness.

### 3. Community Ties

Mr. Reymundo lacks ties to the local community, and there is no indication that he has connections to any particular community in this country. He is a citizen and national of Guatemala without lawful status in the United States. Although he has been encountered by law enforcement several times over the past twelve years, this case represents the first and only time he has been

---

[11] Specifically, I do not presume that a serious flight risk is involved in every case in which a person who is charged with illegal reentry under 8 U.S.C. § 1326 and has traveled long distances without detection. In such cases, the court should proceed to make an individualized assessment of the person's history and characteristics to determine whether they have family or community ties or have demonstrated reliability and trustworthiness in way that mitigates any flight risk.

found in Maryland. Previously, he has been found in Texas and in Iowa multiple times. He has no record of having resided or worked in Maryland, and no information has been presented to suggest that he has close family members, associations with others, or any social support system in this district or any other district in the country. If Mr. Reymundo were released, the only apparent reason he would have to remain in Maryland would be provisions in the Release Order that he remain in the district and attend any scheduled court proceedings as required. The question then becomes whether he can be trusted and relied upon to comply with these provisions.

### 4. Reliability and Trustworthiness

What information the Court has about Mr. Reymundo's history of voluntary conduct—specifically, his ongoing series of criminal reentries into this country—undermines any confidence in his reliability and trustworthiness to comply with court orders. He has presented no employment record and no record of fulfilling family or community responsibilities to weigh against finding that he cannot be trusted or relied upon to conform his behavior to the requirements of a release order. The Court recognizes that it has been presented with no record that Mr. Reymundo ever failed to appear for court proceedings in his prior criminal cases, but non-appearance was never an option for him because he was detained while each case was pending. *See* ECF Nos. 29-1, 29-2. Mr. Reymundo has disregarded his order of removal after no less than four prior deportations and returned to this country each time. At the very least, Mr. Reymundo's prior criminal prosecutions and convictions for violating 8 U.S.C. § 1326(a) made him aware that reentering the country without authorization was a serious crime that would subject him to criminal penalties. His history of unlawful reentries comprises a pattern of willful and active defiance of the laws and orders of the United States. *See Santos-Flores*, 794 F.3d at 1092 (identifying "multiple unlawful entries into the United States" among "[p]rimary factors" to consider in deciding whether a

17

defendant presents a flight risk); *Nunez*, 2025 WL 875803, at *3 ("Defendant's seventh unlawful entry into the United States . . . indicates a pattern of defying the United States laws and court orders."); *Hernandez-Us*, 2025 WL 918695, at *9 (finding that even one "prior removal and subsequent re-entry to the United States without permission, call[ed] into question [defendant's] reliability and trustworthiness"). Thus, Mr. Reymundo's criminal history supports a finding that he is sufficiently unreliable and untrustworthy to suggest that his release would present a flight risk.

To be certain, this finding is not based merely on the fact that Mr. Reymundo was previously convicted of crimes; it is the nature of his past crimes that demonstrates a lack of trustworthiness and a risk of flight. The prior unlawful reentry offenses—like the one presently charged—each involved travel across long distances and national borders without legal right or authorization, in contravention of a removal order supported by the force of law. These characteristics of his offense conduct, and multiple commissions of the same offense, support a finding that Mr. Reymundo is not prepared to comply with court orders and may realistically flee if released from custody.[12]

* * * * *

---

[12] In its opposition brief, the defense quotes statistical information cited in *Figueroa-Alvarez* suggesting that "alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants." ECF No. 28 at 8–9 (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139–40 (emphasis in original)). The district court cited this information to rebut the "common misconception" that "alien defendants granted pretrial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139. Here, the undersigned adopts no such misconception. Determining whether a case involves a flight risk and whether release conditions can assure a defendant's appearance for court calls for an "individualized evaluation" or "individualized assessment" of the defendant and the case before the court. *See Diaz-Hernandez*, 943 F.3d at 1199; *King*, 2024 WL 1657350, at *2. Just as a court must avoid the presumption that an alien defendant is *more* likely to flee prosecution based solely on their citizenship or immigration status, the court must avoid the presumption that a defendant is *less* likely to flee prosecution based solely on their alienage.

Considering Mr. Reymundo's ability and incentives to flee, his lack of ties to the local community or any other particular community within the United States, and the lack of reliability and trustworthiness demonstrated through his history of illegal reentries, I find that this case involves a serious risk Mr. Reymundo will flee prosecution if released from custody. Accordingly, it was proper to conduct a detention hearing in this case upon the government's motion for pretrial detention under 18 U.S.C. § 3142(f)(2)(A).

### B. No Conditions of Release Will Reasonably Assure the Defendant's Appearance

The question becomes "whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," pursuant to 18 U.S.C. § 3142(g). The Court does not find that Mr. Reymundo's release would pose a danger to the community. However, "the nature and circumstances of the offense charged" and what information has been presented to the Court about Mr. Reymundo's history support a finding that no conditions of release will reasonably assure his presence for future court proceedings. *Id.* § 3142(g)(1),(3). The government alleges that the defendant unlawfully reentered the United States after his fourth deportation to Guatemala in September 2020 and was found in Maryland in April 2025. ECF Nos. 3, 33. The nature and circumstances of this offense involved Mr. Reymundo traveling thousands of miles and illegally crossing a border into the United States at an unknown point in time and place. As explained in Part IV.A.2 *supra*, "the weight of the evidence against [the defendant]" is substantial. *Id.* § 3142(g)(2). Mr. Reymundo engaged in the same criminal conduct and long-distance travel at least four times over the past twelve years, disregarding a removal order and demonstrating a lack of respect for the law. Criminal convictions and jail sentences for 8 U.S.C. § 1326(a) violations in two prior federal cases

apparently failed to deter him from reengaging in the same conduct.[13] Importantly, Mr. Reymundo has no known employment record nor connection to any local community in Maryland. This case is the first in which he was found within a thousand miles of this district. Mr. Reymundo's history leaves me with no confidence that he is prepared to comply with the requirements in the Release Order that he reside at a local residential treatment program, restrict his travel to the District of Maryland, and appear for further court proceedings in this case.

By the same token, I do not find that the additional conditions proposed by the defense would reasonably assure Mr. Reymundo's appearance for future proceedings. Even if the Court were to add a location monitoring condition, assuming that such a condition is feasible at the designated residential facility, I find that location monitoring does not offer a reasonable assurance against flight in consideration of Mr. Reymundo's long history of extensive travels in defiance of federal law and his removal order. *See United States v. Salgado*, Crim. No. 20-53JJM, 2020 WL 4747931, at *7 (D.R.I. Aug. 17, 2020) ("Even the Court's most powerful condition – home incarceration with GPS monitoring – is effective only with a defendant committed to remaining and appearing. Otherwise, GPS is effective only in limiting a defendant's head start; it cannot assure that he will not flee.").[14]

The defense argues that the existence of Mr. Reymundo's immigration detainer assures that he "will not have the ability, on his own, to not appear[;]" that his "ability to appear will be

---

[13] The Court makes this finding solely for purposes of determining pretrial release or detention under the BRA and based on a preponderance-of-the-evidence standard. As noted previously, Mr. Reymundo remains entitled a presumption of innocence. *See* 18 U.S.C. § 3142(j).

[14] The defense also offers "temporary release for a period of 30 days" to a residential treatment facility as an additional condition. ECF No. 28 at 19. Following an order of pretrial detention, a court "may, by subsequent order, permit the temporary release of the [defendant] . . . to the extent that the [court] determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defense does not present any compelling reason to warrant temporary release nor suggest that temporary release is necessary for Mr. Reymundo to prepare a defense to the pending charge. Accordingly, a temporary release order would be improper in this case.

within the control of the Government[;]" and "[a]ny nonappearance will, necessarily, be caused by the Government and cannot be counted against Mr. Reymundo-Reymundo, because it would not be volitional on his part." ECF No. 28 at 19. These arguments invite the Court to rely upon ICE custody as among a combination of conditions that will reasonably assure Mr. Reymundo's appearance for further proceedings. For reasons explained in greater detail in Part IV.A.1.a *supra*, I decline this invitation.

If Mr. Reymundo is released to his immigration detainer and ICE opts to assume custody of him and detain him, it would do so "under a different statutory and regulatory regime" over which this Court has no supervision or control. *Diaz-Hernandez*, 943 F.3d at 1199. ICE operates in accordance with its own statutory and regulatory restrictions, mandates, and objectives. *See Zadvydas*, 533 U.S. at 682–84, 121 S. Ct. at 2495 (summarizing statutes and regulations applicable to immigration authorities' decisions whether to detain or release an alien subject to a removal order); *Lett*, 944 F.3d at 470 ("The BRA and the INA . . . serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention."); *Vasquez-Benitez*, 919 F.3d at 552 ("Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities."); *United States v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009) ("There is no predicting the actions of ICE because the defendant is not in its physical custody . . . ."). This Court can only "speculate as to what may or may not happen in the future to the defendant" once he enters ICE custody, *Diaz-Hernandez*, 943 F.3d at 1199, and cannot rely upon ICE custody to find that his appearance for future proceedings in this criminal case would be reasonably assured. *See* Part IV.A.1.a *supra*.

## V.    CONCLUSION

For the foregoing reasons, the government's Motion to Review Release Order (ECF No. 24) is granted, the Release Order is vacated, and Mr. Reymundo shall be detained pending trial. A separate Order of Detention will issue.


July 15, 2025
_____
Date

_____/S/_____
Matthew J. Maddox
United States District Judge

22